**SO ORDERED.**

**SIGNED this 23 day of August, 2007.**



*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion Designated for On-Line Publication, But Not Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

ERIC JOHN OXLEY,
DENA LYNN OXLEY,

CASE NO. 05-12382-7
CHAPTER 7

DEBTORS.

### OPINION DENYING MOTION TO VACATE AGREED ORDER REINSTATING DEBTORS' DISCHARGES

This contested matter came before the Court for hearing on July 19, 2007. Creditor Hardwood Supply, LLC, asked the Court to vacate an order agreed to by the Debtors and the Chapter 7 Trustee that had reinstated the Debtors' discharges and objected to reinstating the discharges, but in the event the reinstatement was allowed to stand, sought clarification of its effective date. Hardwood Supply appeared by counsel Kathleen Harrell-Latham of Redmond & Nazar, L.L.P., of Wichita, Kansas. The Debtors

appeared by counsel William H. Zimmerman, Jr.  Trustee Carl B. Davis appeared on his own behalf.  The Court considered the circumstances presented and announced that it would deny Hardwood Supply's request to vacate the Debtors' discharges, but would not require the creditor to release money it garnished while the discharges were revoked.  This opinion is being issued to more fully explain the Court's reasoning.

**FACTS**

The dispute in this case began when the Debtors failed to turn over to Trustee Davis the amount of money that had been in two bank accounts on the day they filed for bankruptcy.  They disclosed both accounts on their schedules, but reported their personal account had a balance of $143.52 and Mr. Oxley's business account had a balance of $112.82 as of the filing date, April 25, 2005.  They later provided account statements to the Trustee that showed the account balances were actually $335.49 and $3,362.45 on that date.  Four months after the bankruptcy petition was filed, on August 29, the Trustee sent a letter to the Debtors' attorney at the time, Thomas Harris of Valley Center, asking for turnover of those amounts.

Almost two months after that letter, on October 20, the Trustee filed a motion to compel turnover of the money, which was granted on December 15, 2005.  The Debtors' discharges were entered two weeks later, on December 28.

On July 21, 2006, the Trustee filed Adversary No. 06-5342, seeking a money judgment of $3,697.94 ($335.49 + $3,362.45) plus the $250 filing fee, and revocation of

the Debtors' discharges for violating § 727(d)(3) and (e)(2) of the Bankruptcy Code.[1] The Debtors did not respond to the complaint, and a default judgment against them was entered on November 2, 2006. The copies of the judgment that were mailed to the Debtors were returned to the Clerk's Office as shown by docket entries 11 and 12 in the adversary proceeding, so the Debtors had apparently moved by then. An order revoking the Debtors' discharges was entered in the main case a few weeks later, on November 21.

On January 4, 2007, the Debtors' current attorney, William Zimmerman, appeared for them by filing a motion to reopen the adversary proceeding and set aside the default judgment. The motion said the Debtors were originally unable to comply with the Court's order for turnover, but now could pay the Trustee $3,947.94 "which represented monies in their bank account as of the date they filed for relief." (It also included the $250 adversary filing fee.) The Trustee objected to the motion, saying the Debtors had made payment arrangements with him, but given him only a worthless check that they never replaced. Hearings on this dispute were continued several times. The Trustee and the Debtors were the only parties to the adversary proceeding, so notices of all these matters were sent only to them.

On March 30, the Trustee filed an interim report in the main case which included this statement: "Discharge REVOKED-Debtors are attempting to reinstate discharge and

---

[1] Section 727(d)(3) allows a discharge to be revoked if the debtor violated § 727(a)(6); the Trustee was presumably relying on subparagraph (A) of (a)(6), which applies when the debtor has refused to obey any lawful order of the court. As relevant here, § 727(e)(2) lets the Trustee seek revocation under § 727(d)(3) for one year after the discharge is granted.

3

will pay the money owed to the estate." On May 1, 2007, also in the main case, Mr. Zimmerman filed an "Agreed Motion to Reinstate Discharge," reporting that the Debtors had paid the Trustee the required amount. The same day, the Court signed an order reinstating the discharges, which Mr. Zimmerman and the Trustee had both signed.

Two weeks after the discharges were reinstated, creditor Hardwood Supply filed a motion to vacate the agreed order and objecting to reinstatement of the Debtors' discharges. As indicated by an attachment to a proof of claim that Hardwood Supply filed, it got a default judgment in state court against Eric Oxley d/b/a Arrowhead Construction a couple of months before he and his wife filed for bankruptcy.[2] According to the motion to vacate and an attachment, after the Debtors' discharges were revoked, Hardwood Supply garnished money held by an individual on behalf of a company that owed a debt to Arrowhead Construction. The Debtors' bankruptcy petition and schedules indicate Arrowhead Construction is or was a partnership between Mr. Oxley and a relative. Two days after the Debtors' discharges were reinstated, attorney Elizabeth Carson filed a reply to the garnishee's answer on behalf of Eric Oxley and Brian Oxley dba Arrowhead Construction, asserting among other things that Eric Oxley's reinstated discharge barred the garnishment and that Hardwood Supply was violating the discharge injunction. The Debtors objected to Hardwood Supply's motion to vacate.

---

[2]The judgment was based on a worthless check of about $8,400, and included prejudgment interest, attorney fees, court costs, and damages of about $8,900 under K.S.A. 60-2610(a). Under the statute, damages can be equal to three times the amount of the check but not more than $500 more than the amount of the check. Hardwood Supply's proof of claim was for $21,183.46.

4

**DISCUSSION**

Hardwood Supply makes four arguments in its motion to vacate: (1) the discharge reinstatement should be vacated because no notice of the motion to reinstate was given to creditors and they had no opportunity to object to the reinstatement; (2) revocation of a debtor's discharge is permanent and the discharge cannot be reinstated; (3) revocation of the Debtors' discharges should not have been vacated because they violated the original turnover order; and (4) if reinstatement of the discharges was permissible, it should not be applied retroactively at Hardwood Supply's expense. The Debtors object that they are entitled to the reinstatement of their discharges "under the generally accepted powers of the Court," and that entry of their reinstated discharges does not harm Hardwood Supply.

Since the Debtors did not appeal the order revoking their discharges or, within 10 days of its entry, file a motion for new trial or to alter or amend under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59, the revocation order became a final order. This means the Debtors' motion to reopen the adversary proceeding and set aside the default judgment was one seeking relief under Civil Rule 60.[3] The relevant portions of Rule 60 read:

> (b) On motion and upon such terms as are just, a court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have any prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion

---

[3]With exceptions that are not involved here, Federal Rule of Bankruptcy Procedure 9024 makes Civil Rule 60 apply to cases under the Bankruptcy Code.

5

> shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

By paying the Trustee, the Debtors satisfied the monetary obligation of the judgment entered in the adversary proceeding, so subdivision (5) of the rule might apply here. Strictly speaking, the Trustee and the Debtors should have submitted an order reopening the adversary and setting aside the default judgment, and then submitted an agreed order resolving the adversary, but the most important thing to do, given their settlement, was to get an order entered in the Debtors' main bankruptcy case that would notify creditors the discharges were reinstated. The revocation order was entered in the main case because of the judgment in the adversary, but only the revocation order, not the adversary judgment, would have been sent to creditors. If subdivision (5) for some reason did not authorize the reinstatement order, the Court believes subdivision (6) did.

Hardwood Supply has not mentioned Rule 60 in its motion, instead relying mainly on case law to support its arguments. The Court will address those arguments next.

**1.     Notice**

Hardwood Supply suggests the reinstatement order must be vacated because no notice was given as required by Bankruptcy Rule 2002. Rule 2002(f)(6), along with Rule 4006, requires notice to be sent to creditors of "the waiver, denial, or revocation of a discharge," but nothing in either rule requires notice of a motion to reinstate a revoked discharge to be given. Subdivision (a)(3) of Rule 2002 might be applicable here — it

6

requires notice of the hearing on approval of a compromise or settlement of a controversy "unless the court for cause shown directs that notice not be sent." The agreed motion to reinstate the discharges that the Trustee and the Debtors submitted might be covered by this provision. Their agreement certainly affected the creditors' interests, since reinstatement of the discharges would prevent the creditors from enforcing their claims against the Debtors. On the other hand, it is unclear what kind of objection the creditors could have made to the motion. They already had the chance to object to discharge under § 727 and to dischargeability under § 523. If the Trustee, the party who obtained the revocation of the discharges, was satisfied that the Debtors' discharges should be reinstated, the Court does not believe Hardwood Supply could have asserted a valid objection to that relief so long as such relief was permissible. Of course, if Hardwood Supply's argument that revoked discharges cannot be reinstated were correct, that would be a valid objection creditors could make, so the Court will address it next.

**2.     Is revocation of discharge permanent?**

To support its claim that discharge revocation is permanent, Hardwood Supply cites the Tenth Circuit's opinion in *In re Midkiff*.[4] It quotes this from the case:

> Indeed, revocation involves far more than temporarily setting aside a discharge. "[R]evocation of discharge . . . has the same effect as a denial of discharge. 'The revocation of a discharge makes the discharge a nullity . . .' The result then in either revocation or denial of discharge is obviously that the bankrupt does not

---

[4]342 F.3d 1194 (10th Cir. 2003).

7

receive a discharge."[5]

But *Midkiff* is not at all like this case. The Midkiffs were Chapter 13 debtors who completed the payments apparently required under their plan. The trustee filed a certificate of completion, but on the day the bankruptcy court entered the discharges, the trustee received an income tax refund for the debtors that constituted disposable income under their plan.[6] On the trustee's motion, the bankruptcy court then vacated the discharges so the trustee could disburse the refund as provided by the plan.[7] The debtors appealed, arguing among other things that their discharges could not be vacated under Bankruptcy Rule 9024 and Civil Rule 60 because § 1328(e)'s limitation of the grounds for revoking discharges to debtor fraud[8] also limited the grounds for relief under those rules.[9] The Tenth Circuit affirmed the lower courts, distinguishing the effects of revoking a discharge from those of vacating one.[10] In the context of the opinion, the language Hardwood Supply quotes does not mean revocation of a discharge is permanent in the sense that it cannot be set aside under Rule 60(b); rather, the language just describes what

---

[5] 342 F.3d at 1199 (quoting *In re Hairston*, 3 B.R. 436, 438 (Bankr. N.M. 1980), which, in part, was quoting 1A *Collier on Bankruptcy*, § 15.14, at 1514 (14th ed. 1978)).

[6] *Id*. at 1196-97.

[7] *Id*. at 1197.

[8] Section 1328(e) is still the same today: a Chapter 13 discharge may be revoked for one year after it is granted but only if the debtor obtained the discharge through fraud and the party seeking revocation did not know of the fraud before the discharge was granted.

[9] *Id*. at 1198.

[10] 342 F.3d at 1198-1200.

8

the bankruptcy court did in that case as something short of revoking a discharge. In the case before this Court, the question is whether a bankruptcy court has authority to reinstate a discharge after the discharge has been revoked, not whether a bankruptcy court has authority under Rule 60 to vacate a discharge or can only revoke it under a Bankruptcy Code provision.

Two other cases Hardwood Supply relies on are also distinguishable from this case. In *Klapp v. Landsman (In re Klapp)*,[11] the question was whether the debtors could discharge a debt despite § 523(a)(9) of the Bankruptcy Code because, although they had owed the debt when they filed a prior case, they had neither "waived" discharge nor been "denied" a discharge in the prior case, but instead had had their discharges revoked. The debtors conceded their discharges in the prior case had been revoked because they had fraudulently concealed property during the case, and the Ninth Circuit ruled the revocation of the discharges on that ground "has the same effect under § 523(a)(9) as would a simple denial of discharge on that basis." In *Francis v. Hairston (In re Hairston)*,[12] the question was whether, under the 1898 Bankruptcy Act, the revocation of the debtor's discharge in a prior case barred the discharge in a later case of debts he had listed in the earlier case. In both cases, then, a final order revoking discharge in a prior case barred discharge in a new case of debts that existed when the first case was filed. The question in this case, of course, is whether the order revoking a discharge can be set

---

[11]706 F.2d 998 (9th Cir. 1983) (*per curiam*).

[12]3 B.R. 436 (Bankr. D.N.M. 1980).

aside in the same case, not what effect the order revoking the discharges would have in a later case if it were not set aside.

In short, nothing Hardwood Supply has cited convinces the Court that the revocation order was permanent and could not be set aside under Rule 60(b).

**3. Should the revocation of discharge have been set aside even though the Debtors failed to comply with the original turnover order?**

Hardwood Supply contends the order reinstating the discharges should not have been entered because the Debtors have said only that they were unable to comply with the initial turnover order. This, it argues, does not explain why they failed: (1) to file an answer in the adversary proceeding, (2) to allege the property was not property of the estate, (3) to provide any meritorious defense, or (4) to dispute the sufficiency of service. Consequently, Hardwood Supply concludes, the Debtors were not entitled to relief from the judgment in the adversary proceeding and their discharges should not have been reinstated.

The Court believes the Debtors' assertion that they were unable to comply with the initial turnover order means that by the time the Trustee asked them to turn over the money, four months after they filed their bankruptcy petition, they no longer had the money that had been in their accounts when they filed their petition, but they did not dispute his right to recover the money from them. The Court might agree the discharges should not be reinstated if the Debtors had willfully refused to turn the money over, but if that were the case, the Trustee presumably would not have agreed their discharges should

be reinstated. It appears the Trustee is satisfied the Debtors did not give him the money because they did not have it when he asked for it, and he used the discharge revocation to pressure them to obtain other money to pay him. A case Hardwood Supply cites in this part of its motion actually supports making this kind of distinction among orders debtors fail to comply with.

In *Hill v. Muniz (In re Muniz)*,[13] the pro se debtor failed to turn over to the Chapter 7 trustee: (1) the balance in her credit union account as of the date of filing, (2) the non-exempt portion of unpaid wages and accrued vacation pay owed to her on the date of filing, and (3) federal and state income tax refunds based on returns she filed after filing for bankruptcy.[14] The trustee sought revocation of the debtor's discharge. Although at the trustee's request, the court had entered an order to turn over all this property, the court decided its procedures for granting such requests were lacking because they failed to require the trustee to show that the debtor still had the ability to turn over the property when the request was made.[15] The court declined to revoke the discharge based on the failure to turn over the account balance, the non-exempt wages, and the non-exempt accrued vacation pay because no evidence was presented to show what became of the account balance or to show when or if the debtor ever received the wages or vacation

---

[13] 320 B.R. 697 (Bankr. D. Colo. 2005).

[14] *Id.* at 698-99.

[15] *Id.* at 699-700.

pay.[16] However, the evidence did convince the court that the debtor received the federal and state income tax refunds, knew they were property of the estate, knew she was obliged to turn them over to the trustee, and failed to do so.[17] The court said the debtor's offer at trial to pay $100 per month to the trustee "truly is too little and far too late."[18] The court revoked the debtor's discharge.[19] *Muniz* indicates the Debtors' inability to pay the trustee when the turnover order was entered would have been a valid defense to the turnover order itself and to the adversary complaint to revoke their discharges.

The Court concludes the Trustee had at least the discretion, if not the obligation, to agree to have the Debtors' discharges reinstated despite their failure to comply with the original turnover order. This case does not require the Court to decide whether a trustee may agree to such relief for a debtor who had the ability to obey an order but willfully failed to do so.

4. **Should the reinstatement of the Debtors' discharges be modified to make clear it has no retroactive effect?**

Hardwood Supply asks the Court to declare that the reinstatement of the Debtors' discharges has no retroactive effect. Presumably it seeks this relief because the reply to the garnishment answer that was filed in the state court action by Elizabeth Carson on

---

[16]*Id.* at 700-01.

[17]*Id.* at 701-02.

[18]*Id.* at 702.

[19]*Id.* at 703.

12

behalf of Debtor Eric Oxley and others included the assertion: "The debt to Hardwood Supply is barred by the discharge in bankruptcy and Hardwood Supply is in violation of the discharge injunction of the bankruptcy court." Responding to Hardwood Supply's motion to vacate the agreed discharge reinstatement order, Mr. Zimmerman asserted, "The entry of the Order does not harm Hardwood Supply, LLC."

But Hardwood Supply would obviously be harmed if the reinstatement would apply retroactively to invalidate the non-wage garnishment the creditor properly pursued in state court. The garnishment was commenced while the discharges remained revoked. Under Kansas law, a garnishment of intangible property other than earnings attaches property the garnishee has that belongs to the judgment debtor and any debts the garnishee owes to the judgment debtor at the time of service of the garnishment, as well as property the garnishee acquires and debts the garnishee owes the judgment debtor that come due between service of the garnishment and the time the garnishee files an answer to it.[20] A valid garnishment gives the garnishing creditor a lien on the garnished property as of the time of service of the garnishment.[21] This lien has priority over rights in the property that might be created or perfected later.[22] Nothing in the Bankruptcy Code or

---

[20] K.S.A. 60-732(c).

[21] *See Morris v. St. Joseph Medical Center, Inc. (In re Fisher)*, 194 B.lR. 525, 529 (Bankr. D. Kan. 1996); *Redmond v. Hardman (In re Boden)*, 61 B.R. 329, 330-31 (Bankr. D. Kan. 1986).

[22] *See, e.g., Farmers Union Jobbing Ass'n v. Sullivan*, 137 Kan. 196, 199-201, *modified in part* 137 Kan. 450, 450-51 (1933) (judgment creditor had priority in rents garnished before mortgagee took action to enforce assignment of rents that predated garnishment); *Glessner v. Union Nat'l Bank & Trust Co. (In re Glessner)*, 140 B.R. 556, 561 (Bankr. D. Kan. 1992) (relying on *Farmers Union* to conclude rents were not mortgagee's cash collateral in Chapter 11 bankruptcy case); *see also* K.S.A. 2006 Supp.

13

other federal law specifies that an order reinstating a debtor's discharge has any retroactive effect, or gives the debtor any right to avoid or otherwise invalidate any lien that properly attached while the debtor was not protected by the discharge.

In an analogous situation, another bankruptcy judge in the District of Kansas denied the debtors' motion to retroactively re-impose the automatic stay and invalidate a foreclosure sale that was completed between the dismissal and the reinstatement of their Chapter 13 case.[23] In this case, the Court is aware of no law that would make the reinstatement of the Debtors' discharges automatically apply retroactively, and sees no reason to exercise any discretion it might have to make the reinstatement apply retroactively to invalidate Hardwood Supply's garnishment, which was perfectly valid at the time it occurred. The reinstatement of the discharges should have no effect on the state court garnishment proceeding. The Court notes other defenses not based on bankruptcy law were also asserted in the reply to the garnishee's answer that was filed on behalf of Eric Oxley and Brian Oxley dba Arrowhead Construction. The Court expresses no opinion on the validity of those other defenses.

**CONCLUSION**

---

84-9-317(a)(2) (security interest generally subordinate to rights of person who becomes lien creditor before security interest is perfected), and K.S.A. 2006 Supp. 84-9-102(52)(A) ("lien creditor" means "creditor that has acquired a lien on the property involved by attachment, levy, or the like [such as garnishment]").

[23]*In re Leroy*, Case No. 05-41993-13, Memorandum and Order Denying Debtors' Motion to Void Sheriff's Sale and Requiring Amended Plan, Conversion or Dismissal (Bankr. D. Kan. Jan. 8, 2007) (Karlin, J.), *published at* 2007 Bankr. LEXIS 25.

14

For these reasons, the Court denies Hardwood Supply's motion to vacate the agreed order reinstating the Debtors' discharges. However, the Court hereby declares the reinstatement of the discharges does not give Debtor Eric Oxley a defense to Hardwood Supply's rights in the property garnished in the state court proceeding while his discharge was revoked.

# # #